# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ERMELINDA HERNANDEZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:13-cv-01995-SAB

ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL

(ECF Nos. 16, 17)

## I.

## INTRODUCTION

Plaintiff Ermelinda Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff alleges she is disabled due to major depressive disease, sleep apnea, diabetes, ongoing headaches, leg pain, and anxiety. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 10, 11.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on September 15, 2010. (AR 62.) Plaintiff's applications were initially denied on April 25, 2011, and denied upon reconsideration on July 19, 2011. (AR 104-108, 112-116.) Plaintiff requested and received a hearing before Administrative Law Judge John Cusker ("the ALJ"). Plaintiff appeared for a hearing on June 15, 2012. (AR 34-61.) On August 30, 2012, the ALJ found that Plaintiff was not disabled. (AR 15-28.) The Appeals Council denied Plaintiff's request for review on September 26, 2013. (AR 9-11.)

### A.     Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at the June 15, 2012 hearing. (AR 36.) Plaintiff was 49 years old on the date of the hearing. (AR 38.) She was 5 foot 5 inches tall and weighed 267 pounds. (AR 38.) Plaintiff had lost 140 pounds in the previous couple of years. (AR 49.) Plaintiff had a driver's license but did not drive. (AR 38.) Plaintiff graduated from high school and attended a couple years of college. (AR 38.)

Plaintiff last worked as a customer service representative. (AR 39.) She stopped working in February 2010 when she was having chest pains which turned out to be a minor heart attack. (AR 40-41.) Previously, she worked as a tax preparer, office assistant, and a customer service supervisor. (AR 39.) Earlier in the year, Plaintiff had worked 20 to 25 hours per week for 2 months as an office assistant. (AR 39-40.) Plaintiff was filing, working on the computer and answering phones. (AR 40.) She stopped because she was not able to help the business owner due to her disability. (AR 40.) She was let go for missing too much work and not keeping up with the job duties. (AR 47.) Her employer was not making enough money to keep Plaintiff on the payroll. (AR 48.)

Plaintiff rented a room in a house. (AR 45.) She could handle her personal care, prepare meals, do laundry, shop, and keep up her room. (AR 45.) Plaintiff's only hobby was watching television. (AR 45.) Plaintiff sat or stood when she watches television, altering her position

every fifteen to twenty minutes. (AR 52.) Plaintiff attended church twice a month. (AR 45-46.) Plaintiff was able to be on her feet for fifteen minutes, could lift a plate, and her legs went numb if she sat for two hours. (AR 46.)

Plaintiff stated she was unable to work because her mind was not clear, as if she was overmedicated, but it was worse when she did not take her medications. (AR 40.) When this occurs she felt as if her mind was racing and when she did things it felt like she was not sure of something. (AR 49.) Plaintiff had been admitted to the behavioral center a couple times for wanting to harm herself and had been treated by Fresno County Behavioral Health. (AR 41.) When she was depressed she did not eat and it made her depression worse. (AR 49.) Plaintiff had crying spells two to three times per day on a daily basis. (AR 50.) The spells lasted about 20 minutes. (AR 50.) Plaintiff had migraine headaches every two weeks or so. (AR 50.) Plaintiff gave herself injections when she felt the migraine coming on. (AR 50.) The pain lasted about 20 minutes and then the medication worked. (AR 50.) After the injection, Plaintiff was sleepy and had to close her eyes for about two hours. (AR 50.)

Plaintiff took insulin three times a day for her diabetes and used a continuous positive air pressure ("C-PAP") machine for sleep apnea. (AR 51-52.) Sometimes she was not able to sleep through the night due to depression and anxiety. (AR 53-54.)

Plaintiff was using a cane at the hearing because she had fallen the week prior. (AR 42.) She began falling at the end of the prior year, and the doctors had not determined why. (AR 54.) She had not fallen in the four months prior to the last fall. (AR 54.) Plaintiff was taking pain medication for pain in her wrist. (AR 43.) She was diagnosed with a ganglion cyst and tenosynovitis three weeks prior to the hearing. (AR 43-44.) Plaintiff found her medications to be helpful, but felt distraught sometimes. (AR 44.)

B. **ALJ Findings**

The ALJ found that Plaintiff meet the insured status requirements of the Social Security Act through December 31, 2014 and had not engaged in any substantial gainful activity since the alleged date of onset. (AR 20.) Plaintiff had the following severe impairments: diabetes mellitus, obesity, osteoarthritis, and major depressive disease. (AR 20.) Plaintiff's impairments,

alone or in combination, did not meet or medically equal the severity of the listed impairments. (AR 21.)

Plaintiff had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; stand, sit, and walk up to 6 hours in an 8-hour workday; could occasionally climb ladders, ropes, or scaffolds; and was capable of frequent balancing, stooping, knelling, crouching, crawling, and climbing stairs and ramps. (AR 22.) She should avoid concentrated exposure to unprotected heights. (AR 22.) Plaintiff was able to remember and understand simple 1-2 step and some detailed and complex tasks. (AR 22.) She was able to sustain concentration, persistence, and pace for simple 1-2 step, detailed, and complex tasks. (AR 22.) Plaintiff was able to accept instructions from supervisors; could interact appropriately with supervisors, coworker, and the public; and adapt to work-related change in most work-like settings. (AR 22.)

Plaintiff was capable of performing her past relevant work as an order clerk, circulation clerk, administrative clerk, and tax preparer manager and had not been under a period of disability as defined in the Social Security Act, from February 10, 2010, through the date of the decision. (AR 27-28.)

## III.

## LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION

Plaintiff contends that the ALJ erred by failing to provide specific reasons for the finding that Dr. Moalemi's opinions were not consistent with the other medical opinions of record. (Pl.'s Opening Brief 6-9, ECF No. 16.) Defendant counters that the ALJ reasonably gave the greatest weight to the opinions of Drs. Quint, Klein, and Schwartz because they were consistent with the overall medical record and the ALJ provided specific reasons for his findings. (Def.'s Opp. to Pl.'s Opening Brief 5-8, ECF No. 17.)

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substance evidence, and the ALJ is to

resolve the conflict.  Andrews, 53 F.3d at 1041.  However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record.  Andrews, 53 F.3d at 1041.

**A.    Relevant Medical Record**

1.    Dr. Moalemi's Medical Source Statements

The ALJ gave little weight to two medical source statements completed by Dr. Moalemi, Plaintiff's treating physician.  (AR 23, 25.)

On May 31, 2011, Dr. Moalemi completed a medical source statement regarding Plaintiff's obstructive sleep apnea, diabetes, and depression.  (AR 528-530.)  Dr. Moalemi listed Plaintiff's primary symptoms as headache, fatigue, and pain.  (AR 528.)  Dr. Moalemi stated that Plaintiff daily suffered headaches with a pain level of 6 out of 10 and her fatigue was estimated at 8 out of 10.  (AR 528.)  Plaintiff's pain was unable to be completely relieved with medication. (AR 528.)  Dr. Moalemi opined that Plaintiff could sit 4 hours in an 8 hour day and stand or walk 3 hours in an 8 hour day; was unable to sit continuously in a work setting; could frequently lift less than 10 pounds, occasionally lift 10 to 20 pounds, and never lift fifty pounds; had no significant limitations in repetitive reaching, handling, fingering or lifting; and did not need a cane or assistive device when engaging in standing or walking.  (AR 528-29.)

Dr. Moalemi opined that Plaintiff's condition would interfere with her ability to keep her neck in a constant position; and Plaintiff was unable to do a full time job that requires "that" activity on a sustained basis.  (AR 529.)  Plaintiff was also limited on her ability to work at a regular job on a sustained basis by her psychological limitations and need to avoid noise and fumes.  (AR 529.)  Plaintiff was found to be capable of tolerating low to moderate work stress. (AR 529-30.)  Dr. Moalemi found that Plaintiff's bipolar disorder and diabetes were not stabilized and she would be absent 2 to 3 times per month as a result of her impairments or for treatment.  (AR 530.)

In April 2012, Dr. Moalemi completed a medical course statement regarding Plaintiff's diabetes, migraines, high blood pressure, and depression.  (AR 568-571.)   The primary

1  symptoms addressed by the opinion were pain and weakness in both of Plaintiff wrists.  (AR
2  568.)  Dr. Moalemi estimated Plaintiff's pain and fatigue at 10 out of 10 and found that the pain
3  has not been completely received with medication.  (AR 568.)  Dr. Moalemi opined that Plaintiff
4  could sit 0-2 hours and stand/walk 0-2 hours in an 8 hour day; Plaintiff could not sit continuously
5  in a work setting; was never able to lift any weight; and had significant limitations in doing
6  repetitive reaching, handling, fingering or lifting.  (AR 569.)  Plaintiff did not need to use a cane
7  or other assistive device when standing or walking.  (AR 569.)  Plaintiff's condition interfered
8  with her ability to keep her neck in a constant position.  (AR 569.)  Dr. Moalemi found Plaintiff
9  unable to do a full time competitive job that required activity on a sustained basis.  (AR 570.)
10 Plaintiff was also limited in her ability to work at a regular job on a sustained basis by her
11 psychological limitations.  (AR 570.)  Plaintiff was incapable of tolerating low stress and would
12 be absent from work two to three times per month as a result of her impairments or treatment.
13 (AR 570-71.)

　　　　2.　　Dr. Wagner's Opinion

15    The ALJ gave little weight to Dr. Moalemi's opinions because Dr. Quint reviewed the
16 earlier opinion and noted it was inconsistent with Dr. Wagnor's findings and opinion.  (AR 25.)

17    Dr. Wagner conducted a consultative physical examination of Plaintiff on March 15,
18 2011.  (AR 424-429.)  Plaintiff had a history of diabetes for approximately ten years with blood
19 sugars in the 300 to 400 range during most of the previous two months.  (AR 424.)  She denied
20 any ophthalmologic complications of diabetes; the medical records noted no retinopathy; and her
21 eyes were in good shape.  (AR 424.)  There was no history of any cerebrovascular accidents.
22 (AR 424.)  Plaintiff's creatinine level was 0.6 one month prior showing that she has no
23 significant renal dysfunction.  (AR 424.)  Plaintiff did complain of some symptoms of diabetic
24 neuropathy, such as significant numbness in the toes and leg cramps as well as a feeling of pins
25 and needles in her legs and feet that occur primarily at nighttime.  (AR 424.)

26    Plaintiff stated a history of a mild heart attack and was told that there was no damage to
27 her heart and that a catheterization showed that her heart was "bruised."  (AR 425.)  Dr. Wagnor
28 noted there was a "strange circumlocution in several of the medical notes."  (AR 425.)  Plaintiff

7

had no occlusions in the coronary arteries and was very occasionally using nitroglycerin for anxiety attacks, but had no further symptoms reminiscent of angina. (AR 425.) Dr. Wagnor found that Plaintiff did not appear to have any symptoms of ongoing coronary disease. (AR 425.)

Plaintiff had some chronic headaches over the previous several months and stated she had received injections approximately once per month at the emergency room. (AR 425.) Plaintiff had a temporal artery biopsy on February 10, 2010 which was negative. (AR 425.)

Plaintiff reported that she lived with her mother. (AR 425.) She does a small amount of cooking and cleaning around the house. (AR 425.) She does go shopping, but does not drive due to anxiety. (AR 425.) Plaintiff performs her own activities of daily living and walks about half an hour four times per week. (AR 425.)

Dr. Wagnor found Plaintiff's past medical history was significant for obstructive sleep apnea for which she uses a C-PAP machine that helps a lot; hyperlipidemia; headaches; hepatomegaly; appendectomy; cholecystectomy; cesarean section; and tonsillectomy. (AR 426.) Dr. Wagnor noted that Plaintiff was easily able to get up out of the chair in the waiting room and walk to the examination room without assistance carrying multiple bags in her arms which doing so. (AR 426.) Plaintiff sat comfortably and was easily able to get on and off the examination table and bend over at the waist to take off her shoes and put them back on. (AR 426.)

Dr. Wagnor's examination notes normal findings other than some very slight tenderness in the left calf. (AR 426-428.) Dr. Wagnor diagnosed Plaintiff with diabetes with no end organ damage other than possibly diabetic neuropathy in the legs and feet; history of heart catheterization two years prior with no significant coronary lesions and no angina symptoms since that time; and headaches with a temporal artery biopsy which was negative. (AR 428.) Dr. Wagnor found that Plaintiff had no limitations due to her physical conditions. (AR 428-429.)

3. <u>Dr. Quint's Opinion</u>

**a.    Physical residual functional capacity assessment**

On June 20, 2011, Dr. Quint completed a physical residual functional capacity assessment of Plaintiff. (AR 461-466.)

8

Dr. Quint found that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; stand and or walk about 6 hours in an 8 hour day; sit about 6 hours in an 8 hour day; was unlimited in her capacity to push and or pull; and was limited to only occasionally climbing ladders, ropes or scaffolds. (AR 462-463.) Plaintiff had no manipulative, visual, communicative, or environmental limitations other than she needed to avoid concentrated exposure to unprotected heights. (AR 463-464.)

**b.     Case analysis**

Dr. Quint also completed a case analysis. (AR 467-469.) Dr. Quint identified the following significant objective findings:

Plaintiff was seen on February 17, 2010 at Kaiser Neurology complaining of headaches every day which are helped by Vicodin. (AR 467.) Plaintiff's neurological examination was normal. (AR 467.) Plaintiff was diagnosed with headache, combination of chronic tension and medical overuse headache. (AR 467.) Plaintiff was switched to Neurontin. (AR 467.)

Plaintiff was seen for a second opinion on February 22, 2010. She complained she was still having headaches and was given a trial of Topamax. (AR 467.)

On February 23, 2010, Plaintiff was seen in the emergency room at Kaiser complaining she was depressed, anxious, and had a headache since October and wants to give up. (AR 467.) Plaintiff admitted to taking pills, but threw them up so she cut her wrists with a lancet. She was held on a 5150 and admitted. (AR 467.)

Plaintiff was seen twice in April 2010 for follow-ups of her uncontrolled diabetes, high blood pressure, headaches, and chest pain. (AR 467.) Her blood sugars were running in the 250 to 400 range. (AR 467.)

Plaintiff was seen in August 2010 and complained of being very depressed with lots of personal problems. Plaintiff complained of migraines and that she is waking up choking from her sleep apnea. (AR 468.) Plaintiff has friends, but isolates herself and attempted suicide two weeks prior. (AR 468.) She has poor self-esteem; is tearful; feels helpless, hopeless, and worthless; has difficulty concentrating; is lethargic, amotivational, and has anhedonia; is preoccupied with death; and withdrawn from others. She was referred to the emergency room.

(AR 468.) Emergency room records note she has anxiety, stating she lost her job and insurance, has family problems, her husband is in prison for molesting her daughter, and she has been having bad dreams. (AR 468.) Plaintiff's mood/affect is normal and she seems mildly lethargic. (AR 468.)

Plaintiff had a mental health assessment in September 2010 complaining of feeling depressed, sad, lonely, worthless, hopeless, and helpless. (AR 468.) Plaintiff complains of crying all day at home and work. (AR 468.) She was fired in February 2010 for crying on the job. (AR 468.) Plaintiff states she cannot eat or sleep and has lost a lot of weight. (AR 468.) Plaintiff has insomnia, intrusive dreams and nightmares, is withdrawn, tense, and fearful. (AR 468.) Plaintiff is guarded, with slow speech, and mood is sad, dysphoric, depressed and worried. (AR 468.) Plaintiff's affect is fluctuating and tearful and thoughts are ruminative, circumstantial. (AR 468.) Plaintiff has a Global Assessment of Function ("GAF") Score[2] of 45. (AR 468.)

Plaintiff was seen again on December 9, 2010. She complains she is not feeling any better on her new medication. (AR 468.) Plaintiff is still having trouble with her son. (AR 468.) Plaintiff's mood is depressed, affect is blunted. (AR 468.) Plaintiff has a GAF of 55.[3] Her medications were adjusted. (AR 468.)

On March 15, 2011, Plaintiff was seen for a consultative medical examination as discussed above. (AR 468.)

On March 25, 2011, Plaintiff was seen for a psychological consultative examination. (AR 468.) Plaintiff complained that her depression started in 1993 and had gotten worse. (AR

---

[2] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)). A score of 40 signifies '[s]ome impairment in reality testing or communication' or 'major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. . . . .'" Green v. Astrue, No.5:10-cv-01294-AJW, 2011 WL 2785741, at *2 n.2 (C.D.Cal. July 15, 2011) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders Multiaxial Assessment 30, 34 (4th ed. Text rev. 2000) (DSM-IV)).

[3] "A GAF score in the range of 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Cornelison, 2011 WL 6001698, at 4 n.6 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

468.) When she is depressed, which is seven days a week, she feels like everything hurts. (AR 468.) Plaintiff stated that she cannot work but was submitting applications because she needed money. (AR 468.) Plaintiff's mood was euthymic[4] and affect was appropriate. (AR 468.) Plaintiff was intact cognitively and performed satisfactorily. (AR 468.) Plaintiff was found to have a GAF of 59 and was not significantly impaired. (AR 468.)

Dr. Bonner completed a case analysis finding that Plaintiff's impairments did not meet or equal the physical listings and Plaintiff's physical limitations are not severe. (AR 468.) Based on a review of the medical record, Dr. Bonner found that Plaintiff has diabetes with some subjective leg numbness complaints, but medical examination is completely normal with no evidence of any end organ compromise or neuropathy. (AR 468.) Plaintiff alleges leg pain, but the consultative examination only found some mild tenderness in the left calf and a leg ultrasound examination was normal. (AR 468.) Plaintiff alleges headaches and the February 12, 2011 description sounds like muscle tension headaches, no medical examiner has indicated that the headaches are distracting or limiting. (AR 468.) Plaintiff uses a C-PAP machine for her sleep apnea. (AR 468.) Plaintiff complains of little sleep, but this is subjective and Plaintiff has not been described as fatigued. (AR 468.) Although Plaintiff complains that she does not get hungry, her BMI is 42.6, level III obesity. (AR 468.) Dr. Bonner found the degree of Plaintiff's alleged complaints and limitations are not supported by the medical record. (AR 468.) Dr. Bonner opined that Plaintiff's medical conditions are non-limiting and her physical conditions are non-severe with no residual functional capacity indicated. (AR 468-469.)

Dr. Klein found Plaintiff capable of simple and some complex and detailed tasks. (AR 469.)

On April 13, 2011, Plaintiff reported feeling much better and had stopped feeling depressed. (AR 469.) Examination was within normal limits. (AR 469.) Plaintiff's diagnosis was changed and she was found to be in complete remission. (AR 469.)

---

[4] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

11

### c. Dr. Quint's conclusion

Considering this record, Dr. Quint found Dr. Moalemi's opinion inconsistent with the objective findings in the medical file. (AR 469.) Dr. Quint gave great weight to the opinion of Dr. Wagnor because it is consistent with the medical evidence. (AR 469.) Psychologically, Plaintiff became severely depressed after she discovered that her husband had molested her twin daughters, her husband went to prison, and her son was in prison for drug use and car theft. (AR 469.) Plaintiff first sought treatment for her depression in September 2010 and chart notes on April 13, 2013 show no side effects from her medication and her mood was improved. (AR 469.) Plaintiff's examination findings were within normal limits and she reported she was feeling better. (AR 469.) Plaintiff was in full remission. (AR 469.)

Dr. Quint found that there were conflicting medical information from the treating physician and the consultative examiner. The consultative examiner made limited clinical findings and the treating physician's medical records do not support the allegations. (AR 469.) Therefore, the treating physician's medical source statement was given little weight as it is not supported. (AR 469.) The consultative examiner's medical statement was given great weight, but to be fair to Plaintiff and considering her pain and morbid obesity, Dr. Quint found a medium residual functional capacity assessment with some limits would be appropriate. (AR 469.)

### B. The ALJ Provided Specific and Legitimate Reasons for Rejecting the Treating Physicians Opinion that Are Supported by Substantial Evidence

Since Dr. Moalemi's opinion is contradicted by Dr. Wagnor and Dr. Quint the ALJ must provide "specific and legitimate reasons" supported by substantial evidence in the record to reject his opinion. Ryan, 528 F.3d at 1198. While Plaintiff argues that the ALJ erred because he did no more than offer his conclusions, the ALJ can meet his burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F2d 1403, 1408 (9th Cir. 1989)).

Here, the ALJ set forth a detailed and thorough summary of the facts and the medical records relied on by Dr. Quint in his analysis. (AR 22-25.) The ALJ then discussed the weight

assigned to each medical opinion and the reasons why each opinion was so weighted. (AR 25-26.) Plaintiff argues that Dr. Quint's opinion cannot provide substantial evidence to reject Dr. Moalemi's opinion because he is not an examining physician. However, the ALJ did not just state that he was relying on the opinion of Dr. Quint in determining that Plaintiff was not disabled. The ALJ stated that he agreed with Dr. Quint's opinion that Dr. Moalemi's opinion was inconsistent with that of Dr. Wagnor who performed a consultative examination of Plaintiff. (AR 25.)

Dr. Moalemi found that Plaintiff had significant limitations in her ability to work; however, Dr. Wagnor examined Plaintiff and based upon that physical examination determined that Plaintiff had no physical limitations. (AR 428-429.) The ALJ gave both the opinions of Dr. Wagnor and Dr. Moalemi little weight. (AR 425.) The ALJ agreed with Dr. Quint that Dr. Moalemi's opinion was inconsistent with the medical findings of Dr. Wagnor, but he disagreed with Dr. Wagnor's ultimate finding that Plaintiff had no physical limitations and found that Plaintiff's morbid obesity and allegations of pain support some limitations. (AR 25.)

The ALJ gave substantial weight to the opinion of Dr. Quint finding that it was supported by and consistent with the other medical evidence of record. (AR 25.) While the contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, Dr. Quint's finding that Plaintiff was not disabled is consistent with the findings of Dr. Wagnor. Where the opinion of the treating physician is contradicted by that of an examining physician, the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. Dr. Quint found that the medical record did not support Plaintiff's allegations of disability, but to be fair to Plaintiff and considering her pain and morbid obesity he determined that a medium residual functional capacity assessment with some limits would be appropriate. There is other independent evidence in the record to support Dr. Quint's opinion and the ALJ properly relied on Dr. Quint's opinion to resolve the conflicting medical opinions in this instance.

To the extent that Plaintiff is challenging the ALJ rejection of Dr. Moalemi opinion that Plaintiff's mental limitations prohibited her from being capable of handling even low work related stress, the ALJ relied primarily on the findings of Dr. Klein, the state agency psychologist, in making the mental health findings on the issue of severity of Plaintiff's mental impairments. (AR 21.) The ALJ gave little weight to the similar opinion of Dr. Ramsay that Plaintiff was unable to tolerate even low work stress as it was unsupported by objective medical evidence. (AR 25.) Specifically, Dr. Ramsay's May 2011 opinion is inconsistent with his findings that report essentially normal mental status examinations and the report that Plaintiff's mental disorder was in full remission in April 2011. (AR 25-26.) Dr. Brooks' opinion was rejected for similar reasons. (AR 26.) The ALJ found that Plaintiff's mental treatment records show that her condition was in remission for at least six months, and therefore, she does not meet the durational requirement. (AR 26.)

Plaintiff does not challenge the finding that Plaintiff's mental health condition was in remission, and therefore, did not meet the durational requirement nor does he challenge the finding that Drs. Ramsay and Brook's opinions are unsupported by objective medical evidence.

The ALJ gave significant weight to the opinions of agency psychologists, Drs. Klein and Schwartz. (AR 25.) Dr. Klein opined that Plaintiff had the residual functional capacity to remember and understand simple 1-2 step and some detailed, and complex tasks; sustain concentration, persistence, and pace for simple 1-2 step, detailed, and complex tasks; accept instructions from supervisors and interact appropriately with supervisors, coworkers, and the public; and adapt to work-related change in most work-like settings. (AR 454.)

Dr. Schwartz conducted a case analysis considering Plaintiff's allegations of worsening depression and bipolar disorder. (AR 467-470.) Dr. Schwartz noted that Plaintiff's medical record showed an April 13, 2011 visit with examination results within normal limits, and Plaintiff was in full remission with a GAF of 65. (AR 470.) Dr. Schwartz found that the medical record is consistent with Dr. Klein's April 20, 2011 case analysis. (AR 470.)

On March 25, 2011, Plaintiff had a comprehensive psychiatric evaluation by Dr. Lewis. (AR 430-436.) Plaintiff reported that her depression started in 1993 and it had become worse.

14

(AR 430.) Plaintiff stated that she was depressed every day and everything hurts. (AR 430.) Plaintiff denied being suicidal when she was depressed. (AR 430.) Dr. Lewis conducted an examination and opined that Plaintiff was not significantly impaired in her ability to understand and remember very short and simple instructions, understand and remember detailed instructions, maintain concentration and attention; accept instructions from a supervisor and respond appropriately; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions at a consistent pace; interact with coworkers; and deal with various changes in the work setting. (AR 435-436.) Dr. Lewis also found that Plaintiff's daily activities and social functioning were not significantly impaired and the likelihood of Plaintiff deteriorating emotionally in a work environment was minimal. (AR 436.)

Several weeks later, Plaintiff was seen by Dr. Ramsay at Mental Health on April 13, 2011. (AR 438.) Plaintiff stated she was sleeping okay and was feeling better. (AR 438.) She had stopped feeling depressed. (AR 438.) Plaintiff reported that she had tried stopping her medication but after three days she felt worse. (AR 438.) Plaintiff's examination, including her mood, was normal. (AR 438.) Plaintiff's diagnosis was changed to depression in full remission. (AR 439.) Plaintiff's medical record for the next few months demonstrates that her depression remained in control. (AR 498, 536-537, 532-533.) It was not until December 14, 2011, that Plaintiff reported her depression had returned because she requested that her primary care doctor lower the strength of her medication. (AR 553-554.)

The ALJ provided specific and legitimate reasons to reject the opinion of Dr. Moalemi that are supported by substantial evidence in the record. Plaintiff's Social Security appeal is denied.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in rejecting the opinion of Dr. Moalemi. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

1  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be
2  entered in favor of Defendant Commissioner of Social Security and against Plaintiff Ermelinda
3  Hernandez.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **January 27, 2015**

UNITED STATES MAGISTRATE JUDGE